UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CHRIS WING ET AL**                          **CASE NO. 2:21-CV-02173**

**VERSUS**                                    **JUDGE JAMES D. CAIN, JR.**

**ALLSTATE VEHICLE & PROPERTY INSURANCE CO**  **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 17] filed by defendant Allstate Vehicle and Property Insurance Company ("Allstate"). Plaintiffs oppose the motion. Doc. 19.

### I.
### BACKGROUND

This suit arises from damage inflicted to plaintiffs' home in Sulphur, Louisiana, by Hurricane Laura, which made landfall in this state on, respectively, August 27, 2020. At all relevant times, the property was insured under a homeowner's policy issued by Allstate and providing the following types of coverage:

| Coverage Type | Limit of Liability |
|---|---|
| Coverage A (Dwelling) | $356,907.00 |
| Coverage B (Other Structures) | $35,691.00 |
| Coverage C (Personal Property) | $267,681.00 |
| Coverage D (Loss of Use/ALE) | $107,073.00 |

Doc. 17, att. 11, pp. 45–47. Payment under Coverages A, B, and C is subject to a $7,138.00 deductible for windstorm and hail. *Id.*

Plaintiffs made claims for property damage after the storm but allege that Allstate failed to timely or adequately compensate them for their losses under the terms of the policy. They then filed suit in this court on July 26, 2021, raising claims of breach of insurance contract and bad faith. Doc. 1. The court issued its Case Management Order ("CMO") for first-party insurance claims arising from Hurricanes Laura and Delta, governing initial disclosures and the parties' participation in a streamlined settlement process. Doc. 2. Plaintiffs provided their initial disclosures on October 5, 2021, including a computation of claimed losses.

While the case was still under the CMO, plaintiffs produced as part of their initial disclosures the following computation of damages and acknowledged the following payments from Allstate:

| Coverage Type | Damage Computation | Payment |
|---|---|---|
| Coverage A (Dwelling) | $105,531.28 | $37,093.46 |
| Coverage B (Other Structures) | $34,718.54 | $34,718.54 |
| Coverage C (Contents) | $10,608.03 | $10,608.03 |
| Coverage D (Loss of Use/ALE) | $4,130.00 | $4,130.00 |

Doc. 17, att. 6. They also identified Scott Moody of CIA Services, LLC as an expert witness. *Id.*

The case proceeded through the CMO's streamlined settlement process but did not resolve. Doc. 7. By scheduling order dated March 9, 2022, it is now set for bench trial before the undersigned on November 28, 2022. Doc. 8. In accordance with that order and Federal Rule of Civil Procedure 26, plaintiffs made their expert designations on September

22, 2022: namely, Moody as a potential expert witness on the damage the home sustained in the hurricane and Charles Norman as a potential expert witness on the structural integrity of the home post-storm. Doc. 17, att. 10.

Plaintiff Chris Wing was deposed on August 18, 2022. Doc. 17, att. 12. He testified that, to his knowledge, the house sustained no additional damage from Hurricane Delta, which struck the same region in October 2020. *Id.* at 25. He testified that Moody's estimate identified damage in rooms where, to his knowledge, there was no damage—including the office, the master bedroom, and the gym/sunroom. *Id.* at 55–58. Finally, Wing testified that he and his spouse had completed many of the repairs themselves and in the process had expanded the pool house that was damaged in the storm. *Id.* at 21, 51, 58. Wing also admitted that he had not tracked expenses used in these repairs, but that they had deposited all funds received from Allstate in a separate account and that the account had been depleted. *Id.* at 58–59. From these expenditures they could not differentiate between those on repairs and those on the pool house expansion. *Id.* at 71–72.

Allstate now moves for summary judgment on plaintiffs' claims arising from additional sums owed under Coverage A (Dwelling), arguing that plaintiffs lack personal knowledge of any such sums that are owed and have failed to provide Allstate with proof of same. Doc. 17, att. 1. It also moves for dismissal of any claims arising from Hurricane Delta. Plaintiffs oppose the motion, arguing on the first basis that some coverage is still owed in this category and that Allstate has been provided with satisfactory proof of loss in the forms of the Moody/CIA estimate and its own inspections of the property. Doc. 19. On the second basis, they argue that if Delta claims are dismissed then Allstate must be

estopped from arguing at trial that any post-storm repairs are not covered because they were caused by Hurricane Delta. *Id.*

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046).

Under Louisiana law, "satisfactory proof of loss" means "only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008) (internal quotations omitted). "Louisiana decisions demonstrate that 'proof of loss' is a flexible requirement. An insurer of course must receive some kind of notice of a claim before it can act. So long as it receives enough information, the manner in which it obtains the information is immaterial." *Austin v. Parker*, 672 F.2d 508, 520 (5th Cir. 1982) (internal quotations omitted).

Based on Wing's admissions, the Moody/CIA estimate would not appear to provide sufficient proof of loss as to the sum total of plaintiffs' claims under Coverage A. However, satisfactory proof of loss can also be established through the insurer's inspection of the site through its own adjuster. *JRA Inc. v. Essex Ins. Co.*, 72 So.3d 862, 881 (La. Ct. App. 4th Cir. 2011). Whether and when the insurer received "satisfactory proof of loss" sufficient to trigger its payment obligations is a question of fact. *Lamar Adv. Co. v. Zurich Am. Ins. Co.*, 2021 WL 1113451, at *9 (M.D. La. Mar. 22, 2021) (citing 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:5 (4th ed. 2020)). As plaintiffs note, Allstate had and took the opportunity to inspect the property after the storm. Doc. 19, att. 7. Based on this inspection, Allstate estimated the roof as only needing repair rather than replacement and failed to account for brick damage claimed by plaintiff. *Id.* Plaintiff raised these concerns with Allstate as early as October 2020. Doc. 19, att. 6. Accordingly, Allstate's own inspection and plaintiff's concerns may serve as sufficient proof of loss as to these disputed areas of damage and summary judgment must be denied.

Finally, Allstate notes that plaintiffs have admitted that they sustained no damage in Hurricane Delta and asserts that claims raised in this suit based on that storm should be dismissed. Plaintiffs argue that, if such a dismissal is granted, Allstate should be estopped from coming to trial and arguing that any needed repairs were caused by Delta rather than Laura. The court agrees in both respects, and will grant the motion in this regard subject to the understanding that all dwelling repair claims, to the extent they are found to be covered under the policy, arise from Hurricane Laura.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 17] will be **GRANTED IN PART** and **DENIED IN PART.** Accordingly, plaintiffs' claims for coverage arising from Hurricane Delta will be **DISMISSED WITH PREJUDICE** but Allstate is estopped from arguing/attempting to avoid coverage under Coverage A (Dwelling) as to any repair on the basis that it arose from Hurricane Delta rather than Hurricane Laura.

**THUS DONE AND SIGNED** in Chambers on the 19th day of ~~October~~, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE